

**FILED**
1/29/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Vincenza Tomlinson (312) 353-5496

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GEYSON SANCHEZ-PEREZ | 1:26-cr-00044<br>Case No.:<br>BETH W. JANTZ<br>Magistrate Judge |

FILED
JAN 29 2026
Magistrate Judge Beth W. Jantz
United States District Court

## AFFIDAVIT IN REMOVAL PROCEEDING

I, JENNIFER SHAFER, personally appearing before United States Magistrate Judge BETH W. JANTZ and being duly sworn on oath, state that as a federal law enforcement officer I have been informed that GEYSON SANCHEZ-PEREZ has been charged by Complaint in the Southern District of Florida with the following criminal offenses: money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and conspiracy to launder monetary instruments in violation of Title 18, United States Code, Section 1956(h).

A copy of the Complaint is attached. A copy of the arrest warrant also is attached.

JENNIFER SHAFER
Digitally signed by JENNIFER SHAFER
Date: 2026.01.29 15:17:59 -06'00'

JENNIFER SHAFER
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me this 29th day of January 2026. 4:06pm

BETH W. JANTZ
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-02166-MJ-D'Angelo

UNITED STATES OF AMERICA

v.

GEYSON SANCHEZ PEREZ,

    **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?   No

    Respectfully submitted,

    JASON A. REDING QUIÑONES
    UNITED STATES ATTORNEY

By:    */s/Michael Sartoian*
    Michael Sartoian
    Assistant United States Attorney
    Florida Bar No. 124505
    99 Northeast 4th Street
    Miami, Florida 33132-2111
    Tel: 305-961-9117
    Email: Michael.Sartoian@usdoj.gov

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 26-02166-MJ-D'Angelo |
| GEYSON SANCHEZ PEREZ, | ) | |
| | ) | |
| | ) | |
| *Defendant.* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 2025 to January 2026,__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(a)(1)(B)(i) | Money Laundering |
| 18 U.S.C. § 1956(h) | Conspiracy to Launder Monetary Instruments |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Carolina C. Martinez, Special Agent, HSI
*Printed name and title*   HSI: 9892

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __Face Time__

Date: 1/29/26

*Judge's signature*

City and state: __Maimi, Florida__     Honorable Ellen F. D'Angelo, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Carolina C. Martinez, being duly sworn, depose and state the following:

## AGENT BACKGROUND

1. I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI). I have been employed as a Special Agent by HSI since March 2021. I am currently assigned to the HSI Office of the Special Agent in Charge in Miami, Florida and am a member of HSI Miami, El Dorado Task Force – Miami (EDTF-M).

2. As part of my training to become an HSI Special Agent, I attended and graduated from the Federal Law Enforcement Training Center. There I received training in, among other areas, narcotics trafficking, money laundering, and conspiracies to violate the same. During my career as a Special Agent, I have either conducted or participated in financial and narcotics investigations using both traditional and contemporary investigative techniques to include physical surveillance, document review, witness interviews, record checks, and the seizure and analysis of electronic media and data. I have also participated in the execution of search warrants and law enforcement operations which involve the seizure of illegal narcotics and U.S. Currency determined to be the proceeds of criminal activity. As part of the HSI Miami, El Dorado Task Force – Miami (EDTF-M), I was specifically trained in the identification, investigation, and prosecution of individuals involved in the laundering of illegal drug trafficking proceeds via the Black-Market Peso Exchange (BMPE), Trade-Based Money Laundering (TBML), and illicit cryptocurrency transactions.

3. Prior to becoming a Special Agent, I joined the Association of Certified Anti-Money Laundering Specialists (ACAMS) upon completion of the Certified Anti-Money

Laundering Specialist (CAMS) exam. I am a graduate of the University of Granada with both a Bachelor's and Master's degree in Pharmacy.

4. In my capacity as a United States law enforcement officer, I am empowered by law to conduct investigations and to make arrests for offenses detailed in Title 18, Title 21, and Title 31 of the United States Code. I have been involved and assisted in the investigation of violations of various federal criminal laws, including various financial crimes; money laundering; the smuggling of monetary instruments in and out of the United States: as well as the smuggling and distribution of narcotics into and throughout the United States.

5. I have not necessarily included in this affidavit each fact known to me about the matters set forth herein, but only those facts and circumstances that I believe are necessary to establish probable cause for the Court to authorize a criminal complaint.

6. The statements in the affidavit are based upon my investigation; information provided by other individuals, including sworn law enforcement officers and confidential sources; upon my experience and training as a federal agent; and the experience and training of other federal agents.

## PURPOSE OF AFFIDAVIT

7. I submit this Affidavit in support of a criminal complaint against **Geyson SANCHEZ PEREZ** (hereinafter referred to as "SANCHEZ PEREZ"). As set forth below, there is probable cause to believe that between March 2025 and January 2026, in Miami-Dade County, in the Southern District of Florida and elsewhere, SANCHEZ PEREZ (A) did knowingly conduct or attempt to conduct financial transactions, as set forth further below, involving narcotics proceeds, knowing that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds; in violation of

Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (B) conspired to do the same, in violation of Title 18, United States Code, Section 1956(h).

## PROBABLE CAUSE

8. EDTF-M is conducting a criminal investigation involving a trans-national money laundering organization (MLO) involved in the laundering of currency generated through illicit activity to include narcotics trafficking. This MLO also employs the use of structured deposits followed by outgoing wire transfers to facilitate the laundering of funds.

9. Between June and October 2023, EDTF-M agents working in an undercover capacity and posting as narcotraffickers, conducted four undercover transactions in Miami-Dade County with Diovany Gutierrez (hereinafter referred to as "Gutierrez") and another co-conspirator with property represented by law enforcement to be the proceeds of narcotics trafficking,

10. On May 7, 2024, a Federal Grand Jury, sitting in the Southern District of Florida, returned a sealed money laundering indictment against Gutierrez and another co-conspirator. *See* Indictment [DE1], *United States v. Gutierrez, et al.*, Case No. 24-20188-CR-RUIZ.

11. On June 11, 2024, Gutierrez and three other co-conspirators were arrested for money laundering violations.

12. On August 27, 2024, a Federal Grand Jury, sitting in the Southern District of Florida, returned a sealed superseding money laundering indictment against Gutierrez and eight co-conspirators. *See* Second Superseding Indictment [DE46], *United States v. Gutierrez, et al.*, Case No. 24-20188-CR-RUIZ(s).

13. On April 14, 2024, prior to the indictments and arrests, Gutierrez and another co-conspirator travelled back to the United States from Montego Bay, Jamaica. Upon their

3

return, both were encountered and questioned by Customs and Border Protections (CBP) Officers at Fort Lauderdale International Airport (FLL) referencing their recent travel to Montego Bay, Jamaica. During the encounter, both consented to CBP taking and searching their mobile devices. Furthermore, both provided the passwords to their mobile devices to CBP.

14. A blue iPhone 15 Pro belonging to Gutierrez (Gutierrez's phone) was detained by CBP. An extraction was conducted, and Gutierrez's phone was returned on April 18, 2024.

15. A subsequent analysis of Gutierrez's and his co-conspirator's phones, which contained photos, voice messages, text messages, emails, and encrypted WhatsApp communications, showed many last-minute flights, hotel and Airbnb reservations; tokens;[1] money laundering ledgers; deposit receipts; wire transfer confirmations; commission payments; and photographs and videos of bulk currency packaged in quick count bundles in vacuum-sealed bags, plastic wrappings, or in a shoebox.

16. The analysis of Gutierrez's phone identified himself, and other co-conspirators, as members of a Colombian MLO operating in Miami-Dade County and other cities across the United States.

17. Members of the MLO, such as Gutierrez, would travel across the United States to pick up illicit proceeds from unknown individuals and then make structured cash deposits at

---

[1] Every dollar bill has a unique serial number comprised of letters and numbers. The bill, and its serial number, are being used by narcotraffickers and money launderers for a specific financial or drug transaction. Because each bill has a unique serial number that appears once on each side of the dollar bill, individuals involved in narcotics trafficking and money laundering use them to authenticate the illicit transaction between each other when meeting, since these individuals rarely, if ever, know the party with whom they are transacting. The bill serves as a receipt for both parties, as the bill is broken in half, each half containing the serial number; and kept by the parties as a receipt of the transaction. Importantly, the parties involved in the transaction will often sign the bill and write the date, transaction amount, whether the bulk currency was counted.

numerous financial institutions. The MLO would instruct the individuals, like Gutierrez, and others to create fictitious companies and corresponding business bank accounts for the sole purpose of laundering the illicit proceeds. Once the companies and business bank accounts were created, the account holders would provide their business bank account's online login information, debit card and pin number, photograph of their identification document, social security number, business's articles of incorporation, and business employer identification number (EIN) to the MLO which would, in turn, use the business accounts to conduct outgoing wire transfers to other accounts in the United States and other countries. Each wire transfer required a one-time passcode (OTP)[2] which was sent to the account holder's cellphone number via text message for authentication purposes. Each account holder would, in turn, provide the OTP to the MLO to authorize each wire transfer. Additionally, the account holders would physically visit and contact the financial institutions by phone to authenticate transactions and dispute wire transfers blocked by the financial institutions. The MLO would pay a 0.5-1% commission to the account holders for the services rendered.

18. During the analysis of Gutierrez's phone, Gutierrez was identified as a member of the Colombian MLO who would accept illicit proceeds and conduct structured cash deposits to diverse accounts at multiple financial institutions in numerous states with no apparent business relationship with the beneficiary. This was done to disguise the illicit origins of the criminal proceeds in exchange for a commission payment for the services rendered. Additionally, Gutierrez and other co-conspirators were further identified as members of the Colombian MLO that would create Florida Limited Liability Companies (LLC) and business bank accounts in furtherance of

---

[2] An OTP is a numeric code sent from the financial institution to the account holder's registered cellular device that expires shortly after is sent. An OTP is used by financial institutions to provide an additional layer of security when using mobile and online banking.

the money laundering conspiracy while getting paid a commission for the services rendered. These accounts were then utilized by the Colombian MLO to conduct nationwide structured cash deposits followed by outgoing wire transfers to other accounts within the United States and other countries.

19. Analysis of Gutierrez's phone revealed that Gutierrez conducted at least seven street-level illicit financial transactions with subjects he had never met before in multiple cities across the United States, to include Dallas, Charlotte, Rochester, Pittsburgh, Denver, Greenville (South Carolina), Kansas City, and Raleigh, from August 2023 to December 2023, totaling at least $1,185,920.00 derived from narcotics proceeds.

20. Gutierrez and other co-conspirators were paid a 0.8-1% commission to accept the illegal proceeds and 1-1.5% of the total amounts deposited into their business bank accounts. In addition, the MLO paid for all expenses for Gutierrez to travel to other cities and accept the illegal proceeds to include airfare, lodging, food and Uber.

21. All the illicit transactions began with an unknown individual acting as a money broker (MONEY BROKER),[3] who would use a Colombian telephone number or "burner cellular

---

[3] A money broker, in this sense, is a person who facilitates the exchange of U.S. dollars (USD) and other currencies, between narcotics traffickers and individuals and/or businesses, with the money broker earning a commission for his services. In a typical transaction, the broker seeks out or is approached by drug traffickers in the United States who hold drug proceeds in the form of USD. The broker agrees to buy the drug proceeds from the drug trafficker with local currency at a heavily discounted exchange rate. The broker then finds, or is contacted by, customers who seek USD. The broker negotiates a dollar/peso exchange rate with his customers, usually at rates lower than the "regulated" currency exchange market rate, but higher than the broker paid for the USD. The customer then tells the broker where the USD purchased need to be sent or delivered.

Money brokers facilitate the laundering of drug proceeds by directing covert pickups or drops of the drug proceeds in the form of USD in the United States. Money brokers enlist the aid of individuals who perform the money pickups or drops. These individuals are contacted via telephone and receive instructions to proceed to a meeting location where he or she will pick up a large amount of USD from someone they have never met. Once he or she possesses the currency, he or she will receive via telephone another set of instructions directing him or her to make several different deliveries of the currency broken up into smaller amounts across state and county lines and exchanged between different couriers and/or businesses – each of them collecting a commission from each exchange.

phone"[4] and contact Gutierrez over phone number 929-446-8090. The MONEY BROKER would communicate with Gutierrez via encrypted communications using WhatsApp to 1) request a token to authenticate the specific transaction and 2) provide instructions to proceed to a meeting location where Gutierrez would pick up a large amount of U.S. dollars (USD) from someone he had never met.

22. Gutierrez, at the direction of the MONEY BROKER, would fly to the city where the contract was being offered and meet with an unknown party near a hotel or Airbnb in a vehicle to physically pick up the illicit proceeds. Gutierrez would show the token previously sent to the MONEY BROKER to the unknown party to authenticate the transaction. Once authenticated, the unknown party and Gutierrez would sign the token indicating the amount received by Gutierrez and whether it was counted or not at the time of the transaction. Gutierrez would then count the currency received from the unknown party at the hotel or Airbnb and immediately send the MONEY BROKER a photograph and/or video of the bulk currency and signed token. The MONEY BROKER would then provide Gutierrez new instructions directing Gutierrez to deposit the currency broken up into smaller amounts into multiple business accounts at various financial institutions.

23. During the transactions, the illicit proceeds were packaged in quick-count bundles of miscellaneous denominations and further vacuum-sealed into separate bundles or contained in a shoebox. Gutierrez never collected the necessary information from the third party to comply with the reporting requirements under state or federal law.

24. After counting the currency, Gutierrez would then Uber to multiple financial institutions and conduct structured deposits at the direction of the MONEY BROKER. Gutierrez

---

[4] A prepaid cell phone that is not bound to a contract with a carrier or linked to an identity and is usually intended to be disposed of after use.

would send a detailed ledger of the deposits conducted to the MONEY BROKER via encrypted communications using WhatsApp.

25. Through an analysis of financial records for companies belonging to Gutierrez and other co-conspirators as well as communication records, agents identified SANCHEZ PEREZ as a member of the Colombian MLO. Like Gutierrez, SANCHEZ PEREZ would actively travel around the country collecting illicit proceeds and conducting structured cash teller deposits at various banks. SANCHEZ PEREZ would deposit the illicit proceeds into diverse accounts held by shell companies at the various financial institutions. With many of these deposits, SANCHEZ PEREZ would have no apparent business relationship with the purported beneficiary. Analysis of a co-conspirator's phone revealed that SANCHEZ PEREZ conducted at least two (2) street-level illicit financial transactions at the direction of the drug trafficking MLO.

26. Importantly, SANCHEZ PEREZ unlawfully entered the United States on or about November 25, 2024, at or near San Ysidro, California. SANCHEZ PEREZ was encountered by Customs and Border Protection (CBP) and is currently in removal proceedings with an upcoming immigration court date of February 2029.

27. Analysis of communication records between a co-conspirator and telephone number 786-819-5820, saved as "Jeisson Work," identified SANCHEZ PEREZ as the user of 786-819-5820 based on the following: (I) On April 2, 2025, the user of 786-819-5820 requested the co-conspirator to book a flight from Atlanta, Georgia to Miami, Florida. Shortly thereafter, the co-conspirator requested a photograph of the user's passport, which the user responded by sending an image of SANCHEZ PEREZ's Colombian passport; (II) soon after, the co-conspirator replied with a Spirit Airlines booking confirmation under the name "Geyson Sanchez"; (III) on April 2, 2025, following a discussion about opening a business bank account, the user of 786-

819-5820 informed the co-conspirator that he had an AT&T receipt that could be presented to the bank for the account opening, and subsequently sent an AT&T mail correspondence addressed to "Geyson Sanchez Perez." The communication records further revealed that between March of 2025 and June of 2025, SANCHEZ-PEREZ travelled to multiple states including GA, WA, TX to collect and deposit narcotics proceeds into co-conspirator's accounts.

28. A further analysis of communication records between SANCHEZ PEREZ and co-conspirators in Colombia, corporation documents and financial records revealed that the Colombian MLO established the Wyoming Limited Liability Company "PULSAR COMMERCE LLC" in February of 2025 using a residential address in Miami-Dade—previously provided to U.S. Citizenship and Immigration Services (USCIS) by SANCHEZ PEREZ—and that SANCHEZ PEREZ opened corresponding business bank accounts at Bank of America and J.P Morgan Chase in April of 2025. Financial records revealed that PULSAR COMMERCE LLC held bank accounts which received at least $1,189,542 in illicit proceeds between April of 2025 and July of 2025 at the direction of the MLO to disguise the nature, the location, the source, the ownership, or the control of the proceeds. While receiving this amount, the accounts wire transferred at least $1,189,542 through 70 international and domestic wire transfers to other fictious companies and co-conspirators. Further review of communication records showed that SANCHEZ PEREZ provided the Colombian MLO with photographs of debit cards, debit card PINs, and login credentials linked to PULSAR COMMERCE LLC business bank accounts. A further review of financial records revealed that on April 24, 2025, SANCHEZ PEREZ also made a minimum opening deposit into the J.P. Morgan Chase corporate account for RYR SOLUCIONES LLC—a fictitious company—using his Colombian passport as identification. Between April and July 2025, this account received over $541,000 in illicit proceeds.

29. SANCHEZ PEREZ's bank accounts were created for the sole purpose of carrying out the criminal activity and were utilized to deposit currency in multiple states to include NY, WA, IL, MA, SC, GA, CT, DE, AL, OH, FL, NC, MO and PA by unknown subjects with no apparent relationship to SANCHEZ PEREZ at the direction of the MLO. Importantly, SANCHEZ PEREZ's business has no physical presence. SANCHEZ PEREZ's company has an internet presence showing a residential Miami-Dade address —where SANCHEZ PEREZ previously lived and provided to USCIS— and fictitious phone numbers 1-556-123-4248 and 1-876-123-4789.

30. On January 23, 2026, SANCHEZ PEREZ purchased a last-minute flight from Miami, Florida to Chicago, Illinois. In January 26, 2026, during multiple surveillance operations, the Drug Enforcement Administration (DEA) identified SANCHEZ PEREZ as a suspected currency courier operating in the Chicago area. On January 27, 2026, law enforcement observed SANCHEZ PEREZ meeting with a co-conspirator. SANCHEZ PEREZ was observed entering the co-conspirator's vehicle while in possession of a black bag, which appeared to be empty to the agents who observed SANCHEZ PEREZ's movements. The agents then observed SANCHEZ PEREZ exit the co-conspirator's vehicle while possessing the same black bag; however, the black bag appeared to be filled up, rather than empty. Law enforcement subsequently conducted a consensual encounter of SANCHEZ PEREZ after he exited the vehicle and walked towards a residence. During this consensual encounter, law enforcement asked SANCHEZ PEREZ for consent to search the black bag to which SANCHEZ PEREZ provided verbal consent. Pursuant to consent, agents searched the black backpack in SANCHEZ PEREZ's possession and discovered approximately $170,000.00 in U.S. currency believed to be narcotics proceeds. The currency was packaged in quick-count bundles and further plastic-wrapped and

vacuum-sealed into two larger bundles, one labeled as containing $70,000 and the other $100,000. The two larger bundles were concealed inside a medium-sized pink "Happy Birthday" paper bag which was then concealed inside the black backpack. An additional unwrapped, rubber banded bundle of U.S. currency was located in the backpack during the search.

31. Meanwhile, law enforcement conducted a lawful traffic stop on the co-conspirator's vehicle. During the traffic stop, law enforcement asked the co-conspirator for consent to search their vehicle to which the co-conspirator provided law enforcement consent. Pursuant to consensual search of the co-conspirator's vehicle, agents recovered a signed token dated January 27, 2026, reflecting an amount of $170,000. Law enforcement deployed a narcotics canine on the suspected narcotics proceeds to which the canine alerted to the presence of narcotics.

## CONCLUSION

32. Based on the foregoing, there is probable cause to believe that, SANCHEZ PEREZ (A) did knowingly conduct or attempt to conduct financial transactions involving narcotics proceeds, knowing that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (B) conspired to do the same, in violation of Title 18, United States Code, Section 1956(h).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
CAROLINA C. MARTINEZ,
SPECIAL AGENT
HOMELAND SECUIRTY INVESTIGATIONS

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time, HSI: 9892, this 29th day of January 2026.

_____
HONORABLE ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>GEYSON SANCHEZ PEREZ,<br>Defendant. | )<br>)<br>) Case No. 26-02166-CR-D'ANGELO<br>)<br>) |

## ARREST WARRANT

To:  Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

(name of person to be arrested)  Geyson Sanchez Perez ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Conspiracy to Launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h).

Date: 1/29/2026

_____
Issuing officer's signature

City and state: Miami, Florida

Honorable Ellen F. D'Angelo, United States Magisrate Judge
Printed name and title

### Return

This warrant was received on (date) _____, and the person was arrested on (date) _____
at (city and state) _____.

Date: _____

_____
Arresting officer's signature

_____
Printed name and title

AO 442 (Rev. 01/09) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

**(Not for Public Disclosure)**

Name of defendant/offender: _Geyson Sanchez Perez_

Known aliases: _____

Last known residence: _Cook County Jail, 1401 Maybrook Dr. Maywood, IL_

Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _Colombia_

Date of birth: _10/27/1992_

Social Security number: _____

Height: _____ Weight: _____

Sex: _male_ Race: _____

Hair: _____ Eyes: _____

Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates (name, relation, address, phone number): _____

FBI number: _FWNKWPLN0_

Complete description of auto: _____

Investigative agency and address: Homeland Security Investigations
11226 NW 20th Street Miami, Florida 33172

Name and telephone numbers (office and cell) of pretrial services or probation officer (if applicable): _____

Date of last contact with pretrial services or probation officer (if applicable): _____